T.C. Memo. 2002-31

UNITED STATES TAX COURT

STEVEN K. STODDARD AND ELLEN M. STODDARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1527-99.                    Filed January 30, 2002.

Ellen M. Stoddard, pro se.

<u>Sandra Veliz</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and accuracy-related penalties under section
6662(a)[1] on, petitioners' Federal income tax (tax):

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the years at
issue.  Unless otherwise indicated, all Rule references are to
                                        (continued...)

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 1995 | $95,369 | $17,272.40 |
| 1996 | 65,748 | 8,194.60 |
| 1997 | 13,943 | 2,788.60 |

The issues remaining for decision[2] are:

(1)  Are petitioners entitled to deduct a claimed casualty loss for 1997?  We hold that they are not.

(2)  Did petitioners understate the amount of long-term capital gain that they realized for 1995 on the sale of certain property?  We hold that they did.

(3)  Are petitioners entitled to deduct for each of the years 1996 and 1997 certain claimed rental expenses with respect to their residence?  We hold that they are not.

(4)  Are petitioners entitled to deduct for 1996 mortgage interest in excess of the amount conceded by respondent?  We hold that they are not.

(5)  Are petitioners liable for each of the years at issue for the accuracy-related penalty under section 6662(a)?  We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.

[2]Computational or correlative issues also remain, resolution of which flows automatically from the concessions of respondent and our resolution of the determinations in the notice of deficiency (notice) that we address herein.

At the time the petition was filed, petitioners resided in Anacortes, Washington (Anacortes).

Claimed Casualty Loss

### The Quissett

During 1984, petitioners acquired a sailboat named the "Quissett" (Quissett), a 45-foot Peterson schooner made of wood that was built in 1933. At a time not disclosed by the record, petitioners began to use the Quissett for charter sailing. Petitioners advertised the Quissett for charter sailing during 1997.

Petitioners maintained a checking account in the name "Quissett Sailing Charters" (Quissett checking account) throughout the period from at least August 1993 until at least June 1997. Petitioners continued to draw on that account through at least the middle of 1997.

At all times that petitioners owned the Quissett, it required regular repairs and maintenance. At a time not disclosed by the record, petitioners renovated the Quissett.

### Certain Loans Secured by the Quissett

On June 17, 1992, petitioners applied for a loan of $74,367.17 (1992 loan) from Seattle Postal Employees Credit Union (Credit Union) by completing and signing a document entitled "LOANLINER® ADVANCE REQUEST VOUCHER AND SECURITY AGREEMENT" (loan application). The purpose of that loan as stated in that loan

application was, inter alia, boat maintenance.  The 1992 loan application indicated, inter alia, that the Quissett was to secure[3] the 1992 loan and that the value of the Quissett was $110,000.  Petitioners' loan balance with Credit Union before they received the 1992 loan was $8,132.83, and their loan balance with Credit Union after they received that loan was $82,500.

On June 16, 1993, petitioners applied for a loan of $20,000 (1993 loan) from Credit Union by completing and signing a loan application (1993 loan application).  The purpose of that loan as stated in that loan application was "REMODEL CABIN" and "BOAT MAINT".  The 1993 loan application indicated, inter alia, that the Quissett was to secure[4] the 1993 loan and that the value of the Quissett was $170,000.  Petitioners' loan balance with Credit Union before they received the 1993 loan was $76,074.11, and their loan balance with Credit Union after they received that loan was $96,074.11.

On May 24, 1994, petitioners applied for a loan of $15,000 (1994 loan) from Credit Union by completing and signing a loan

---

[3]The terms of the security agreement that petitioners entered into by signing the 1992 loan application were on the reverse side of that document.  The record does not contain a copy of the reverse side of the 1992 loan application and the terms of that security agreement.

[4]The terms of the security agreement that petitioners entered into by signing the 1993 loan application were on the reverse side of that document.  The record does not contain a copy of the reverse side of the 1993 loan application and the terms of that security agreement.

application (1994 loan application).  The purpose of that loan as stated in that loan application was boat repair.  The 1994 loan application indicated, inter alia, that the Quissett was to secure[5] the 1994 loan and that the value of the Quissett was $170,000.  Petitioners' loan balance with Credit Union before they received the 1994 loan was $89,195.63, and their loan balance with Credit Union after they received that loan was $104,195.63.

Foreclosure With Respect to Credit
Union Loan Secured by the Quissett

On November 12, 1996, petitioners filed a petition for bankruptcy (bankruptcy petition) under Chapter 7 of title 11 of the United States Code with the United States Bankruptcy Court for the Western District of Washington (bankruptcy court). Petitioners' bankruptcy petition included a document entitled "SUMMARY OF SCHEDULES", to which was attached, inter alia, "SCHEDULE B--PERSONAL PROPERTY" (bankruptcy Schedule B) and "SCHEDULE D--CREDITORS HOLDING SECURED CLAIMS" (bankruptcy Schedule D).

In bankruptcy Schedule B, petitioners listed the Quissett among their personal property and claimed that it had a fair market value of $84,000.

---

[5]The terms of the security agreement that petitioners entered into by signing the 1994 loan application were on the reverse side of that document.  The record does not contain a copy of the reverse side of the 1994 loan application and the terms of that security agreement.

In bankruptcy Schedule D, petitioners listed Credit Union among their secured creditors.

On December 16, 1996, Credit Union filed a claim against petitioners' bankruptcy estate with respect to a loan of $84,192.13 that was secured by the Quissett.

On January 8, 1997, the trustee of petitioners' bankruptcy estate (trustee) filed a document entitled "TRUSTEE'S REPORT OF NO DISTRIBUTION" (trustee's report) with the bankruptcy court. In that report, the trustee stated, inter alia, that, except for exempt property, no property had been received and no money had been paid on account of petitioners' estate and that there was no property available for distribution from the estate.

On February 21, 1997, the bankruptcy court granted petitioners a discharge.

In May 1997, Credit Union foreclosed on a loan to petitioners that was secured by the Quissett and sold that boat for $22,000.

Credit Union issued Form 1099-C, Cancellation of Debt (Form 1099-C), to Mr. Stoddard for 1997. Form 1099-C indicated that the amount of debt canceled was $64,116.40.

Long-Term Capital Gain From the Sale of Certain Property

During August 1990, petitioners purchased a condominium unit (condo) for $165,000. During 1993, 1994, and part of 1995, petitioners rented that condo. On July 20, 1995, they sold it

for $211,000.

Claimed Rental Expenses

At all relevant times, petitioners owned certain real property located at 5005 Doon Way (Doon Way residence) in Anacortes. During the years at issue, the Doon Way residence was petitioners' primary residence.

At certain times during 1996, petitioners rented the Doon Way residence to various individuals. The respective periods for those rentals generally were short, lasting no more than two or three days, except during June, when petitioners rented the Doon Way residence for the entire month.

During 1997, petitioners placed a classified advertisement with Skagit Valley Publishing, in which the Doon Way residence was offered for rent. Petitioners did not rent the Doon Way residence during 1997.

Certain Amounts Expended by Petitioners

On the dates shown below, petitioners paid the following amounts to the payees indicated by issuing checks drawn on a checking account in the name "Steven or Ellen Stoddard (Quissett)":

| Date of Check | Payee | Amount of Payment |
|---|---|---|
| 9/14/90 | Spa Shop | $3,736.44 |
| 2/13/92[1] | Edensaw Woods | 783.69 |
| 3/20/92 | Edensaw Woods | 1,443.66 |
| 6/2/92 | Edensaw Woods | 909.89 |
| 6/29/92 | Edensaw Woods | 314.13 |
| 7/24/92 | Edensaw Woods | 83.10 |
| 8/24/92 | Edensaw Woods | 2,919.22 |
| 10/28/92 | Brian Callahan | 927.00 |
| 11/10/92 | Brian Callahan | 1,084.50 |
| 11/20/92 | Brian Callahan | 1,405.60 |
| 12/18/92 | Edensaw Woods | 1,000.00 |
| 1/20/93 | Edensaw Woods | 1,000.00 |
| 2/13/93 | Edensaw Woods | 1,000.00 |
| 6/14/93 | Peter Jones | 1,050.00 |

[1]The handwritten notation "Quissett Charters" appeared at the bottom of the check dated 2/13/92.

On the dates shown below, petitioners paid the following amounts to the payees indicated by issuing checks drawn on the Quissett checking account:

| Date of Check | Payee | Amount of Payment |
|---|---|---|
| 8/3/93 | Edensaw Woods | $62.66 |
| 1/2/97 | GTE | 146.06 |
| 1/2/97 | City of Anacortes | 62.79 |
| 1/2/97 | Airtouch Cellular | 21.00 |
| 1/7/97 | State Farm | 374.68 |
| 1/15/97 | GTE | 174.02 |
| 1/15/97 | AT&T | 21.16 |
| 1/29/97 | Skagit Co. | 21.37 |
| 1/31/97 | Finn's Photo | 26.07 |
| 2/3/97 | Costco | 72.10 |
| 2/6/97 | Sears | 37.71 |
| 2/6/97 | Ace Hardware | 25.85 |
| 2/7/97 | City of Anacortes | 65.26 |
| 2/7/97 | Puget Power | 611.61 |

| | | |
|---|---|---|
| 2/19/97 | Sebos | 17.19 |
| 2/19/97 | WA State Ferries | 61.50 |
| 3/3/97 | Washington State Ferries | 49.20 |
| 3/17/97 | Allstate | 77.03 |
| 3/17/97 | Frontier Ford | 27.97 |
| 3/20/97 | GTE | 344.65 |
| 3/20/97 | City of Anacortes | 127.28 |
| 4/1/97 | Washington State Ferries | 49.20 |
| 4/6/97 | Puget Power | 480.76 |
| 4/6/97 | Allstate | 73.55 |
| 4/6/97 | Doug Owens | 50.00 |
| 4/14/97 | Skyline Contract Post Office | 16.40 |
| 4/16/97 | Boelter & Assoc. | 560.00 |
| 4/30/97 | WA. ST. Ferries | 49.20 |
| 4/30/97 | D.O.L. | 491.35 |
| 5/7/97 | Costco | 129.01 |
| 5/17/97 | Seattle Times | 26.05 |
| 5/18/97 | Allstate | 77.03 |
| 5/22/97 | City of Anacortes | 122.63 |
| 5/25/97 | Arcadia Financial | 553.17 |
| 5/28/97 | GTE | 268.09 |
| 5/29/97 | Frontier Industries | 251.68 |
| 6/2/97 | Frontier Lumber | 51.57 |
| 6/9/97 | Frontier Lumber | 14.05 |
| 6/10/97 | Washington State Ferries | 58.75 |
| 6/16/97 | Washington State Ferries | 49.20 |
| 6/16/97 | Allstate | 77.03 |
| 6/17/97 | Puget Sound Energy | 211.74 |

## Petitioners' Tax Returns

Petitioners filed jointly Form 1040, U.S. Individual Income Tax Return (Form 1040), for 1995 (1995 joint return), 1996 (1996 joint return), and 1997 (1997 joint return). Mr. Stoddard and Ms. Stoddard signed their 1995 joint return on April 10, 1996, and April 12, 1996, respectively. Petitioners signed their 1996

and 1997 joint returns on May 14, 1997, and February 8, 1998, respectively.

The 1995 joint return included Schedule A, Itemized Deductions (Schedule A). The 1995 Schedule A claimed deductions of $6,177 for taxes, $38,138 for mortgage interest, and $490 for gifts to charity.

The 1995 joint return also included Schedule D, Capital Gains and Losses (Schedule D). In Schedule D, petitioners reported a long-term capital gain of $25,204, which petitioners included as income on line 13 of their 1995 joint return. In part II of Schedule D, Long-Term Capital Gains and Losses--Assets Held More Than One Year, petitioners reported, inter alia, that (1) the condo was sold on July 20, 1995, (2) the sales price of that condo was $211,000, and (3) the cost or other basis of the condo was $185,796.

The 1995 joint return also included Schedule E, Supplemental Income and Loss (Schedule E). The 1995 Schedule E, inter alia, claimed a depreciation deduction of $5,491 with respect to the condo.

The 1996 joint return included Schedule A. The 1996 Schedule A claimed deductions of $6,834.14 for taxes, $21,846.03 for mortgage interest, and $500 for gifts to charity.

The 1996 joint return also included Schedule E. With respect to the Doon Way residence, the 1996 Schedule E reported

rental income of $4,385.20 and claimed rental expense deductions of $29,382.66, which included $8,806.68 for claimed depreciation, and a 1996 Schedule E loss of $24,997.46.

The 1997 joint return included Schedule A. In the 1997 Schedule A, petitioners claimed, inter alia, a casualty loss deduction of $138,256 with respect to the Quissett. As required, petitioners filed Form 4684, Casualties and Thefts (Form 4684), with the 1997 joint return. In section A of Form 4684, Personal Use Property, petitioners indicated (1) that the "Cost or other basis" of the Quissett was $144,990, (2) that they had no "Insurance or other reimbursement" with respect to the Quissett, (3) that they had no gain from casualty or theft, (4) that the fair market value before the casualty or theft of the Quissett was $175,000, (5) that the fair market value of the Quissett after the casualty or theft was $22,000, and (6) that the amount of the casualty loss with respect to the Quissett, after applying certain limitations, was $138,256.

The 1997 joint return also included Schedule E. With respect to the Doon Way residence, the 1997 Schedule E reported no rents received and claimed rental expense deductions of $17,438, consisting of $391 for claimed advertising, $834 for claimed cleaning and maintenance, $375 for claimed insurance, $1,200 for claimed utilities, and $14,638 for claimed depreciation, and a 1997 Schedule E loss of $17,438.

The 1997 joint return did not report the $64,116.40 of canceled debt that was shown on Form 1099-C that Credit Union issued to Mr. Stoddard for 1997.

Petitioners' Amended Tax Returns

Petitioners filed jointly Form 1040X, Amended U.S. Individual Income Tax Return (Form 1040X), for 1995 (1995 amended joint return), 1996 (1996 amended joint return), and 1997 (1997 amended joint return). Petitioners signed their 1995, 1996, and 1997 amended joint returns on March 13, 1998.

In their 1995 amended joint return, petitioners claimed Schedule A deductions of $132,617, an increase of $87,812 in the deductions that petitioners claimed in Schedule A of their 1995 joint return. In Form 1040X for 1995, part II, Explanation of Changes to Income, Deductions, and Credits, petitioners indicated that the change in the amount of the Schedule A deductions claimed resulted from a "Net operating loss carryback from 1997".

In their 1996 amended joint return, petitioners claimed Schedule A deductions of $59,225, an increase of $30,045 in the deductions that petitioners claimed in Schedule A of their 1996 joint return. In Form 1040X for 1996, part II, Explanation of Changes to Income, Deductions, and Credits, petitioners indicated that the change in the amount of the Schedule A deductions claimed resulted from a "Net operating loss carryback from 1997 casualties & theft loss".

In their 1997 amended joint return, petitioners claimed an amended casualty loss deduction of $168,266 with respect to the Quissett, an increase of $30,010 in the casualty loss deduction that petitioners claimed in Schedule A of their 1997 joint return. As required, petitioners filed Form 4684, Casualties and Thefts (amended Form 4684), with the Form 1040X for 1997. In section A of the amended Form 4684 for 1997, Personal Use Property, petitioners indicated (1) that the "Cost or other basis" of the Quissett was $186,492, (2) that they had no "Insurance or other reimbursement" with respect to the Quissett, (3) that they had no gain from casualty or theft, (4) that the fair market value before the casualty or theft of the Quissett was $175,000, (5) that the fair market value of the Quissett after the casualty or theft was $0, and (6) that the amount of the casualty loss with respect to the Quissett, after applying certain limitations, was $168,266.

Notice of Deficiency

In the notice issued to petitioners for the years at issue, respondent determined, inter alia, to disallow a casualty loss deduction of $138,256 that petitioners claimed in their 1997 joint return with respect to the Quissett. Respondent further determined to disallow the net operating loss (NOL) carryback deductions of $87,812 and $30,045 that petitioners claimed in their respective amended returns for 1995 and 1996. Respondent

made those determinations because petitioners did not establish their entitlement to a casualty loss deduction for 1997.

Respondent also determined in the notice that petitioners realized a long-term capital gain of $211,000 for 1995 from the sale of the condo and that they understated the amount of such gain in their 1995 joint return by $185,796. In determining that petitioners realized $211,000 from the sale of the condo, respondent determined that petitioners' adjusted basis in the condo at the time of its sale was zero.

Respondent further determined in the notice to disallow rental expense deductions of $29,383 and $17,438 claimed in Schedules E of the 1996 and 1997 joint returns, respectively. Respondent made those determinations because petitioners did not establish that the deductions claimed were for amounts (1) that petitioners expended or (2) that petitioners expended for the purpose(s) claimed.

Respondent also determined in the notice to disallow a mortgage interest deduction of $21,846.03 in Schedule A of the 1996 joint return. Respondent made that determination because petitioners did not establish that the deduction claimed was for an amount (1) that petitioners expended or (2) that petitioners expended for the purpose claimed.

Respondent further determined in the notice that petitioners are liable for each of the years at issue for the accuracy-

related penalty under section 6662(a) because of (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.

OPINION

Petitioners[6] have the burden of showing error in respondent's determinations in the notice that remain at issue.[7] See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). With respect to the deductions claimed by petitioners, deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

---

[6]Although Mr. Stoddard did not appear at trial, Ms. Stoddard informed the Court that Mr. Stoddard had authorized her to speak for both of them at trial, and the Court allowed her to do so. Ms. Stoddard filed briefs in this case; Mr. Stoddard did not. However, our findings and conclusions herein shall apply to both Ms. Stoddard and Mr. Stoddard.

[7]With respect to court proceedings arising in connection with examinations commencing after July 22, 1998, under sec. 7491(a) the burden of proof shifts to respondent in specified circumstances. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. The record in this case does not establish the date on which the examination of each of petitioners' taxable years at issue began, and neither party contends that sec. 7491(a) applies here.

With respect to court proceedings arising in connection with examinations commencing after July 22, 1998, under sec. 7491(c) respondent bears the burden of production with respect to any individual's liability for any penalty or addition to tax. Id. As noted above, the record in this case does not establish the date on which the examination of each of petitioners' taxable years at issue began. Moreover, neither party contends that sec. 7491(c) applies here.

Claimed Casualty Loss Deduction

Respondent determined to disallow a casualty loss deduction of $138,256 that petitioners claimed in their 1997 joint return with respect to the Quissett.[8]  Petitioners contend that on January 3, 1997, a storm caused damage to the Quissett and that therefore they are entitled to a casualty loss deduction for 1997.  Respondent contends, inter alia, that petitioners have failed to establish that the alleged storm occurred and that the Quissett sustained the alleged damage during that alleged storm.

Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise.  A loss is treated as sustained during the taxable year in which the loss occurs, as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year.  Sec. 1.165-1(d)(1), Income Tax Regs.

As pertinent here, section 165(c)(3) limits the deduction allowed by section 165(a) in the case of an individual to a loss that arises from fire, storm, shipwreck, or other casualty, or

_____

[8]Respondent further determined to disallow the NOL carryback deductions that petitioners claimed in their 1995 amended joint return and their 1996 amended joint return of $87,812 and $30,045, respectively.  Resolution of respondent's determinations to disallow petitioners' claimed NOL carryback deductions for 1995 and 1996 will flow automatically from our findings and resolution of respondent's determination to disallow petitioners' casualty loss deduction claimed for 1997.

from theft.[9]

Petitioners attempted to satisfy their burden of proof with respect to the casualty loss deduction claimed for 1997 through Ms. Stoddard's testimony and 14 photographs of the Quissett that are part of the instant record.  With respect to Ms. Stoddard's testimony, we found that testimony to be general, conclusory, and/or uncorroborated in certain material respects.  We shall not rely on her testimony to sustain petitioners' burden of proof with respect to the casualty loss deduction claimed for 1997.

With respect to the photographs of the Quissett on which petitioners rely, Ms. Stoddard testified that 12 of the 14 photographs show the Quissett during and after repairs and/or "restoration work" that petitioners undertook before the alleged storm and that 2 of the 14 photographs show the Quissett after the alleged storm caused the damage that petitioners are claiming.  The back side of each of 4 of the 12 photographs that Ms. Stoddard testified show the Quissett before the alleged storm contain handwritten notations indicating that each of those photographs was taken sometime during 1993 and 1994 (i.e., before the alleged storm).  The remaining eight photographs that Ms. Stoddard testified show the Quissett before the alleged casualty do not contain any indication as to when they were taken.  The

---

[9]Petitioners do not contend that the alleged damage with respect to the Quissett was a loss incurred in a trade or business or in any transaction entered into for profit.  See sec. 165(c)(1) and (2).

back side of each of the two photographs that Ms. Stoddard
testified show the Quissett after the alleged storm contain
handwritten notations indicating that each of those photographs
was taken in July 1994, which was around 2-1/2 years before the
alleged storm that petitioners claim occurred on January 3, 1997.
Petitioners introduced no reliable evidence to establish that
those two photographs show storm damage, as opposed to, for
example, the "restoration work" that petitioners undertook with
respect to the Quissett.  On the record before us, we find that
petitioners have failed to establish that any of the 14 photo-
graphs in question shows damage to the Quissett that was caused
by a storm that occurred on January 3, 1997.  On that record, we
further find that petitioners have failed to carry their burden
of proving that the Quissett sustained any damage during a storm
on that date.[10]

Based upon our examination of the entire record before us,
we find that petitioners have failed to carry their burden of

_____

[10]In light of our findings that petitioners have not shown
that the Quissett sustained damage as a result of a storm that
occurred on Jan. 3, 1997, we shall not address respondent's
contention that at the time of the alleged storm the Quissett was
the property of petitioners' bankruptcy estate, and not petition-
ers' property.

Assuming arguendo that petitioners had established that the
Quissett sustained damage as a result of a storm that occurred on
Jan. 3, 1997, on the instant record, we find that petitioners
have failed to establish the amount of any deduction to which
they would be entitled under sec. 165(a).  See sec. 165(b), (h);
sec. 1.165-7(b)(1), (4), Income Tax Regs.

proving that they are entitled to the casualty loss deduction that they are claiming for 1997.[11]

## Long-Term Capital Gain From the Sale of the Condo

Respondent determined in the notice that petitioners realized for 1995 a long-term capital gain of $211,000 from the sale of the condo and that they understated the amount of such gain in their 1995 joint return by $185,796. Respondent concedes that that determination in the notice was wrong in that respondent no longer maintains that, in calculating the amount of such gain, petitioners' basis in the condo at the time of its sale was zero. It is respondent's position that petitioners' adjusted basis in the condo was $148,527 when they sold it for $211,000, that they realized $62,473 of long-term capital gain from that sale, and that they understated the amount of such gain in their 1995 joint return by $37,269.

The parties stipulated that petitioners' cost basis in the condo at the time of its sale was $165,000 and that they sold the condo in 1995 for $211,000. The only dispute between the parties with respect to the sale of the condo is the amount of petitioners' adjusted basis for determining the amount of long-term capital gain that they realized and must recognize for 1995 from that sale.

---

[11]In light of our finding that petitioners have not established their entitlement to a casualty loss deduction for 1997, we find that petitioners have failed to establish that they are entitled to the claimed NOL deductions for 1995 and 1996. See supra note 8.

As we understand petitioners' position, they contend that they expended $20,796 on improvements to the condo and that the cost of those improvements, when added to their cost basis in the condo of $165,000, results in their having an adjusted basis in the condo of $185,796, which is the amount of petitioners' basis that they reported in Schedule D of their 1995 joint return.[12] The parties stipulated that petitioners' adjusted basis in the condo must reflect a reduction of at least $5,491 for the depreciation that petitioners claimed in Schedule E of their 1995 joint return. Consequently, according to petitioners, their adjusted basis in the condo at the time of its sale was $180,305 (i.e., basis of $185,796 reported in Schedule D of petitioners' 1995 joint return reduced by depreciation of $5,491 for 1995 that the parties stipulated should reduce petitioners' basis). It is respondent's position that at the time of the sale of the condo in 1995 petitioners' adjusted basis in the condo was $148,527. In support of that position, respondent contends (1) that petitioners have failed to establish that they made the improvements to the condo that they are claiming and (2) that petitioners' adjusted basis in the condo should be calculated by reducing

_____

[12]Ms. Stoddard did not specify at trial or on brief the exact amount that petitioners are claiming they incurred for improvements to the condo. The checks on which petitioners rely to support their position with respect to the claimed improvements to the condo total $13,983.45. However, we assume that the amount of such claimed improvements is equal to the excess (i.e., $20,796) of the adjusted basis of $185,796 that petitioners claimed in Schedule D of their 1995 joint return over their cost basis in the condo of $165,000 to which the parties stipulated.

their cost basis of $165,000 by the depreciation deductions allowed or allowable, whichever is greater, for each of the years 1993, 1994, and 1995 during which petitioners rented the condo.

We turn first to petitioners' position regarding the improvements that they claim they made to the condo. In support of that position, petitioners rely on Ms. Stoddard's testimony, certain checks payable to Edensaw Woods, Peter Jones, Brian Callahan, and Spa Shops and on the 1993 loan application.

Ms. Stoddard testified that the checks payable to Edensaw Woods represented disbursements for "lumber and specialty wood that we had put into the condominium in the form of ceiling timbers and a bookcase around the fireplace." However, the following handwritten notation appears on one of those checks: "Quissett Charters". Ms. Stoddard testified that the checks payable to Peter Jones and Brian Callahan represented disbursements "for wages paid to them to build this bookcase and surrounding hearth--or it's not a hearth, around the fireplace." It is not clear from Ms. Stoddard's testimony or from the checks on which petitioners rely what she meant when she testified that the wood purchased from Edensaw Woods was "put into the condominium in the form of ceiling timbers". Nor is it clear from Ms. Stoddard's testimony or from the checks on which petitioners rely that the bookcase which was built around the fireplace in the condo constitutes an improvement to the condo. Assuming arguendo that we were able to find on the instant record that the results of the work in the condo about which Ms. Stoddard testified

constitute improvements to the condo, on that record, we are not persuaded that petitioners did not deduct as rental expenses for years prior to the years at issue the cost of such improvements.

As for the copy of the check payable to Spa Shops on which petitioners rely, Ms. Stoddard did not testify about that copy. The sheet of paper on which the copy of the check appears contains the following handwritten notation: "Basis For P.T. Condo". We are not satisfied from that notation or from any other part of the record before us that the check payable to Spa Shops represented a disbursement for an improvement to the condo.

As for the 1993 loan application on which petitioners rely, Ms. Stoddard did not testify about that copy. The sheet of paper on which the copy of the 1993 loan application appears contains the following handwritten notation: "Condo & Boat Basis". We are not satisfied from that notation or from any other part of the record before us that petitioners used all or a portion of the 1993 loan proceeds that they received as a result of the 1993 loan application in order to make improvements to the condo.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they paid for improvements to the condo that should be added to their cost basis in the condo.

We turn next to respondent's contention that, pursuant to sections 1011(a) and 1016(a)(2), petitioners' adjusted basis in the condo must reflect reductions made for the depreciation allowed or allowable, whichever is greater, under section 167(a)

for each year during which petitioners held the condo for rental (i.e., for 1993, 1994, and 1995). The parties stipulated that during 1993 and 1994 petitioners rented the condo, and we have found that they rented the condo for part of 1995. As noted above, the parties stipulated that petitioners' adjusted basis in the condo must reflect at least a reduction of $5,491 for the depreciation that petitioners claimed in Schedule E of their 1995 joint return. Respondent contends that petitioners' adjusted basis in the condo should also reflect reductions for depreciation of $5,491 for each of the years 1993 and 1994.

We agree with respondent that section 1016(a)(2) requires a decrease in petitioners' basis in the condo, determined under section 1012 (i.e., the cost), for depreciation allowed or allowable, whichever is greater, under section 167(a). See secs. 1011(a), 1012, 1016(a)(2); see also Reithmeyer v. Commissioner, 26 T.C. 804, 815 (1956). On the record before us, we find that petitioners have failed to carry their burden of proving that they are not entitled for each of the years 1993 and 1994 to depreciation of at least $5,491 with respect to the condo.[13] On

---

[13]It is not clear from the record whether the depreciation of $5,491 for 1995, which the parties stipulated must be taken into account as a reduction in calculating petitioners' adjusted basis in the condo, was computed for a full year or for a period that began on Jan. 1, 1995, and ended on July 20, 1995, when petitioners sold the condo. The parties stipulated that petitioners' adjusted basis in the condo must reflect at least a reduction for the depreciation of $5,491 that petitioners claimed in the Schedule E of their 1995 return, and petitioners sold the condo on July 20, 1995. We believe that the depreciation for 1995 of $5,491, which the parties stipulated must be reflected as
(continued...)

that record, we further find that petitioners have failed to show that their cost basis of $165,000 in the condo should not be reduced by depreciation of $5,491 for each of the years 1993, 1994, and 1995.  On the instant record, we find that petitioners have failed to show that their adjusted basis in the condo at the time of its sale was greater than $148,527 (i.e., petitioners' cost basis of $165,000 reduced by depreciation of $5,491 for each of the years 1993, 1994, and 1995).

Based upon our examination of the entire record before us, we find that petitioners have failed to show that they did not realize a long-term capital gain of $62,473 on the sale of the condo (i.e., sales price of $211,000 minus petitioners' adjusted basis in the condo of $148,527).  On that record, we further find that petitioners have failed to show that they did not understate their long-term capital gain for 1995 on the sale of the condo by $37,269 (i.e., petitioners' long-term capital gain of $62,473 reduced by the long-term capital gain of $25,204 that petitioners reported in Schedule D of their 1995 joint return).

---

[13](...continued)
a reduction in calculating petitioners' adjusted basis in the condo, was computed for the period that began on Jan. 1, 1995, and ended on July 20, 1995, when petitioners sold the condo.  If our belief is correct, respondent's position that depreciation of only $5,491 for each of the years 1993 and 1994 during which petitioners rented the condo must also be reflected as a reduction in calculating petitioners' adjusted basis in the condo would be advantageous to petitioners.

Claimed Rental Expense Deductions

In Schedules E of their 1996 and 1997 joint returns, petitioners claimed rental expense deductions of $29,382.66 and $17,438, respectively, with respect to the Doon Way residence. Respondent determined to disallow those claimed deductions.

We turn first to the rental expense deductions that petitioners claimed in Schedule E of their 1996 joint return. It is respondent's position that petitioners are not entitled to the rental expense deductions claimed for 1996 because they have failed to establish (1) that the expenses in question were incurred or, if incurred, that those expenses were incurred with respect to the Doon Way residence and (2) that those rental expense deductions are not disallowed by section 280A. Petitioners introduced no evidence supporting their entitlement to those deductions. On the instant record, we find that petitioners have failed to carry their burden of proving that they are entitled to deduct the rental expenses claimed in Schedule E of their 1996 joint return.

We turn next to the rental expense deductions that petitioners claimed in Schedule E of their 1997 joint return. On brief, respondent concedes that petitioners incurred certain rental expenses with respect to the Doon Way residence.[14] However,

---

[14]At trial, petitioners introduced into the record certain checks to establish that during 1997 they paid certain expenses for advertising, cleaning and maintenance, utilities, and insurance. Those checks, when totaled for each such category of expense, exceed the total amount of expenses that petitioners

(continued...)

respondent contends that petitioners are not entitled to the claimed rental expense deductions for 1997 because petitioners have failed to establish that those deductions are not disallowed by section 280A.

Section 280A(a) provides:

SEC. 280A.   DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.

(a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

Section 280A(b) provides:

(b) Exception for Interest, Taxes, Casualty Losses, Etc.--Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity).

A "dwelling unit" is defined to include a house, apartment, condominium, or similar property.  Sec. 280A(f)(1)(A).  On the record before us, we find that the Doon Way residence constitutes a dwelling unit within the meaning of section 280A.

---

[14](...continued)
claimed as a deduction for each such category in Schedule E of their 1997 joint return.  Although petitioners did not claim rental expense deductions in their 1997 joint return for legal fees, supplies, and automobile and travel, petitioners introduced into the record at trial certain checks in an attempt to establish that during 1997 they incurred certain expenses for each such category of expense.  It is not clear whether respondent is conceding the total amount of rental expenses that petitioners claimed in Schedule E of their 1997 joint return or some other amount.  In any event, in light of our findings below, we need not decide the exact amount of rental expenses that respondent concedes petitioners paid during 1997.

In determining whether a dwelling unit is a residence within the meaning of section 280A(a), section 280A(d)(1) provides in pertinent part:

> a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of--
>
> (A) 14 days, or
>
> (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.

We have found that petitioners did not rent the Doon Way residence during 1997. The Doon Way residence constituted a "residence" within the meaning of section 280A(d)(1) only if petitioners' use of the Doon Way residence for personal purposes exceeded 14 days during 1997. See sec. 280A(d)(1).

At trial, Ms. Stoddard testified that the Doon Way residence was petitioners' primary residence during 1997.[15] On the instant record, we find that petitioners have failed to carry their burden of proving that their personal use of the Doon Way residence did not exceed 14 days during 1997. On that record, we find that the Doon Way residence qualifies within the meaning of section 280A(d)(1) as petitioners' "residence" during 1997.

---

[15]At trial, Ms. Stoddard also testified that "we were staying on the boat [Quissett] right after the casualty loss [to the Quissett]. We had it in the boatyard. We were--we were being stalked, and we basically moved out of the house and put it up for rent." On the record before us, we find that petitioners have failed to establish (1) that they did not live in the Doon Way residence after the Quissett was seized and sold in May 1997 and (2) that during 1997 they owned property in addition to the Doon Way residence in which they resided.

Accordingly, for 1997 petitioners are subject to the limitations provided in section 280A.

Section 280A(c)(3) provides:

(3) Rental use.--Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determinated after the application of subsection (e)).

Section 280A(e) provides:

(1) In general.--In any case where a taxpayer who is an individual * * * uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental bears to the total number of days during such year that the unit (or portion thereof) is used.

(2) Exception for deductions otherwise allowable. --This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was rented.

On the instant record, we find that the numerator of the fraction under the limitation imposed by section 280A(e)(1) is zero. That is because the numerator of that fraction consists of the number of days during 1997 that the Doon Way residence was rented, and we have found that petitioners did not rent the Doon Way residence during that year. On the record before us, we find that petitioners have failed to carry their burden of proving that the expenses that they claimed for 1997 with respect to the

Doon Way residence are not disallowed by section 280A.[16]

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of proving that they are entitled to deduct the respective rental expenses claimed for 1996 and 1997.

Claimed Mortgage Interest Deduction

Respondent determined in the notice to disallow the mortgage interest deduction of $21,846.03 that petitioners claimed in their 1996 joint return with respect to the Doon Way residence. On brief, respondent concedes that petitioners have established that they are entitled for 1996 to a mortgage interest deduction of $17,392. It is petitioners' position that they are entitled to deduct the entire $21,846.03 of mortgage interest that they claimed in their 1996 joint return.

Petitioners attempted to satisfy their burden of proof with respect to the mortgage interest deduction at issue through Ms. Stoddard's testimony.[17] We found her testimony to be general,

---

[16]In their 1997 Schedule E, petitioners claimed rental expense deductions for advertising, cleaning and maintenance, insurance, utilities, and depreciation. At trial, petitioners introduced into the record certain other checks in an attempt to establish that they also paid, but did not deduct in their 1997 Schedule E, rental expenses for legal fees, supplies, and automobile and travel. See supra note 14. On the record before us, we find that petitioners have failed to establish that any of the expenses claimed as a deduction for 1997 would be allowable as a deduction whether or not the Doon Way residence was rented. See sec. 280A(b), (e)(2).

[17]Petitioners did not make part of the instant record Form 1098, Mortgage Interest Statement, for 1996 with respect to the
(continued...)

conclusory, and/or uncorroborated in certain material respects, and we shall not rely on it. On the record before us, we find that petitioners have failed to carry their burden of showing that during 1996 they paid $4,454.03 of mortgage interest in addition to the $17,392 conceded by respondent.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of proving that they are entitled to a mortgage interest deduction in excess of the $17,392 conceded by respondent.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for each of the years at issue for the accuracy-related penalty under section 6662(a) because of: (1) Negligence under section 6662(b)(1) or (2) a substantial understatement of income tax under section 6662(b)(2).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from, inter alia, negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of income tax, sec. 6662(b)(2). For purposes of section 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as a lack of care or failure to do what a reasonable

[17](...continued)
Doon Way residence.

person would do under the circumstances.  Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990).  An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion.  Sec. 6664(c)(1).

The only evidence that petitioners introduced in support of their position that they were not negligent was Ms. Stoddard's testimony.  We found her testimony to be general, conclusory, and/or uncorroborated in certain material respects, and we shall not rely on it to establish petitioners' position that respondent erred in determining to impose the accuracy-related penalty under section 6662(a) for each of the years at issue.  On the record before us, we find that petitioners have failed to show that they were not negligent and did not disregard rules or regulations within the meaning of section 6662(b)(1), or otherwise did what a reasonable person would do, with respect to any portion of the

underpayment for any of the years at issue.[18]  On that record, we further find that petitioners have failed to show that they acted with reasonable cause and in good faith with respect to any portion of the underpayment for any of the years at issue.  See sec. 6664(c).

We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of respondent,

Decision will be entered

under Rule 155.

---

[18]In the notice, respondent determined that petitioners are liable for each of the years at issue for the accuracy-related penalty under sec. 6662(a) on the alternative ground that there was a substantial understatement of income tax under sec. 6662(b)(2).  We have found that petitioners are liable for each of the years at issue for the accuracy-related penalty because of negligence or disregard of rules or regulations under sec. 6662(b)(1).  In light of that finding, we shall not address whether petitioners are liable for each of the years at issue for the accuracy-related penalty because of a substantial understatement of income tax under sec. 6662(b)(2).